## Cortese v. Cortese, Appellant.

554

Argued October 7, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Harry Goldbacher*, with him *James C. Lanshe*, for appellant.

*Paul A. McGinley*, for appellee.

OPINION BY RHODES, P. J., January 14, 1949:

This is an appeal from an order of the court below discharging respondent's rule to set aside and vacate a

decree of divorce. Respondent attacked the decree on two grounds: (1) Want of jurisdiction in the court based on lack of libellant's residence in Pennsylvania at the time of filing the libel and for one year prior thereto; and (2) fraudulent concealment of knowledge of respondent's address, resulting in no actual notice to her of the divorce proceeding.

The parties were married in Hazleton, Pennsylvania, on September 22, 1925, and lived there until July 14, 1942, when libellant obtained a position in Belmar, New Jersey. Libellant and respondent, with their son, lived in Asbury Park, New Jersey, until September 13, 1945, when they separated. Libellant moved to the Waynewood Hotel, Asbury Park, New Jersey, where he lived for about eight months; he then moved to 627 Brinley Avenue, Bradley Beach, New Jersey. Sometime after the separation libellant moved a few of his personal belongings to the apartment of his married sister, Mrs. James Riley, at 235 North Franklin Street, Allentown, Pennsylvania, and he claims to have spent week-ends at this Allentown address, although there is evidence in the record that he visited there infrequently.

On January 13, 1947, libellant instituted divorce proceedings in Lehigh County. The record contains evidence showing that, although he knew of his wife's whereabouts, he fraudulently concealed this knowledge from the master and the court, and had service of the subpœna and libel made by publication. On August 11, 1947, a final decree was entered, granting libellant a divorce on the ground of indignities. Respondent received no notice of the proceedings or of the final decree. After learning of the rendition of the final decree, she instituted the present proceeding for its vacation, on October 3, 1947. Testimony was taken on respondent's rule. The court below felt there was a serious question about libellant's residence in Allentown, the basis of its jurisdiction over the divorce action; and it disapproved libellant's failure to notify respondent of the proceedings.

However, the court below discharged the rule primarily on the ground that respondent's attack on the decree was not made in good faith.

It is settled that the intentional withholding of notice of a divorce action from a respondent constitutes extrinsic fraud, which, if proved, vitiates the decree. *Walton v. Walton*, 84 Pa. Superior Ct. 366; *Willetts v. Willetts*, 96 Pa. Superior Ct. 198; *Estok v. Estok*, 102 Pa. Superior Ct. 604, 157 A. 356; *Carey v. Carey*, 121 Pa. Superior Ct. 251, 183 A. 371. Extrinsic fraud may consist in fraudulently keeping respondent in ignorance of the action, or in a fraudulently assumed residence in an attempt to meet jurisdictional requirements. The imposition in both instances would not be on the respondent alone, but on the court and the Commonwealth, and respondent's lack of equity is not conclusive. Where such extrinsic fraud is clearly established, the public interest requires that the decree be set aside and vacated. *Walton v. Walton*, supra, 84 Pa. Superior Ct. 366; *Willetts v. Willetts*, supra, 96 Pa. Superior Ct. 198, 206, 207.

In any divorce case the Commonwealth is always an interested third party, and the court, or the master on its behalf, should take up the investigation of any fact, the determination of which is fundamental and material to the issue involved. *Bonomo v. Bonomo*, 123 Pa. Superior Ct. 451, 454, 187 A. 222. The practice has not been uniform in this Commonwealth where decrees of divorce have been attacked because of extrinsic fraud. *Nixon v. Nixon*, 329 Pa. 256, 262, 266, 198 A. 154. A rule issued or petition filed to set aside and vacate a divorce decree on such ground is in the nature of an ancillary proceeding to the original action in divorce, and where the fraud is alleged and proved the decree may be reopened and vacated. *Carey v. Carey*, supra, 121 Pa. Superior Ct. 251, 258, 183 A. 371. And, further, where extrinsic fraud of this type is clearly shown by the evidence, the appellate court will set aside and vacate the

decree although the lower court has refused to do so. *Willetts v. Willetts*, supra, 96 Pa. Superior Ct. 198.

The record contains conclusive proof that libellant fraudulently kept respondent unaware of the divorce proceedings. As stated, service was by publication, and respondent never received any actual notice of the proceedings. Respondent's parents, Mr. and Mrs. James Davis, lived at 654 N. Vine Street, Hazleton, Pennsylvania, and her aunt, Mrs. Myrtle Cross, lived at 128 Magnolia Street in the same city. The parents and the aunt had lived at their respective addresses in Hazleton for at least twenty years. Immediately following the separation of September 13, 1945, respondent left her husband in New Jersey and returned to the home of her aunt in Hazleton. The parties had lived in Hazleton from 1924 to 1942, and libellant was fully aware of respondent's connections there. A few months after the separation she moved to 1821 North Park Avenue, Philadelphia, and obtained employment as a demonstrator in the Woolworth Store, at 1210 Chestnut Street, Philadelphia.

The evidence that libellant knew where his wife could be reached and fraudulently concealed this knowledge during the divorce proceedings establishes extrinsic fraud beyond any reasonable controversy. Libellant visited in Hazleton around Christmas of 1946, and saw his wife at the home of her aunt. This was less than a month prior to his filing of the libel. He was continuously in touch with respondent's parents in Hazleton during the divorce proceedings, and wrote respondent a letter addressed to her parent's home address. From his place of employment at Belmar, New Jersey, he talked to his wife on the telephone on two occasions after the divorce action had been started, but he did not mention the action. His only explanation was that telephone calls from his place of employment were "censored."

Following the separation, respondent was represented by an attorney, George H. Harris, Esq., of Hazleton, who

corresponded with libellant. Libellant visited Mr. Harris on at least two occasions. Mr. Harris testified that on one of these visits, which took place in February or March of 1947, after the divorce action had been instituted, he told libellant that his wife was employed at the Woolworth Store, 1210 Chestnut Street, Philadelphia. Libellant never mentioned the divorce action to respondent or her attorney. Libellant received a letter from Mr. Harris, representing respondent, postmarked August 9, 1947, two days before the entry of the final decree in the divorce proceedings.

James Riley, husband of libellant's sister, who resided at 235 North Franklin Street, Allentown, contacted respondent at her place of employment, the Woolworth Store, 1210 Chestnut Street, Philadelphia, sometime during Christmas week of 1946. Libellant denied that Riley had ever informed him where respondent was employed or could be reached. Riley was not called to testify. However, it should be noted that Riley, and his wife, libellant's sister, occupied the apartment at 235 North Franklin Street, Allentown, Pennsylvania, which is the address sworn to in the libel as the residence of libellant at the time he instituted the action, and where he claimed that he spent his week-ends.

When interrogated by the master as to his wife's whereabouts, libellant stated that his efforts to contact her had been unsuccessful, and that he had no idea where she was living at the time. And he did not fully disclose where he had been living in New Jersey. On the hearing pursuant to the rule to set aside and vacate the divorce decree, libellant was asked why he did not inform the master as to the facts concerning his wife's whereabouts. His excuse was that he was not questioned specifically on this subject.

From a reading of the entire testimony in this proceeding, it is impossible to come to any other conclusion than that libellant fraudulently concealed knowledge of his wife's whereabouts and purposely failed to give her

notice of the proceedings. Such basic fraud makes it obligatory for us to set aside the divorce decree. We know of no more appropriate occasion to set aside and vacate a decree of divorce than this one in which a party has committed such flagrant fraud on all concerned. Moreover, libellant went through a marriage ceremony with another woman, on October 17, 1947, with knowledge of the present proceeding to set aside and vacate the decree of August 11, 1947. It may be that the equities in this proceeding are not all on the side of respondent. But the interest of the Commonwealth in divorce proceedings is higher than the respective interests of the parties. The present appeal is distinguishable from the case of *Knode v. Knode*, 159 Pa. Superior Ct. 210, 48 A. 2d 151, relied upon by libellant and the court below, as here extrinsic fraud upon the part of the libellant is clearly established, and involves "the dignity and honor of the court and the rights and interests of the Commonwealth of Pennsylvania." *Willetts v. Willetts*, supra, 96 Pa. Superior Ct. 198, 208.

Section 16 of the Act of May 2, 1929, P. L. 1237, 23 PS § 16, provides that a libellant must be a bona fide resident in the Commonwealth at least one whole year immediately previous to the filing of the libel or complaint. This requirement is strictly jurisdictional and cannot be waived by the parties, even with the consent of the court. *Verbeck v. Verbeck*, 160 Pa. Superior Ct. 515, 518, 52 A. 2d 241. As indicated, libellant continued to live and work in New Jersey, following the separation of September, 1945, and up to the time of the filing of the libel on January 13, 1947. A comparatively small portion of this period, if any, was spent at the Allentown address sworn to in the libel.

On January 11, 1947, the same day he signed his libel in divorce, libellant registered as a voter, giving an Allentown address other than 235 North Franklin Street. Four letters addressed to libellant's son, then in military service, sent in December of 1945 from Neptune, New

Jersey, were offered in evidence, and showed libellant's return address as Waynewood Hotel, Asbury Park, New Jersey. In an application for an examination before the United States Civil Service Commission, dated June 4, 1947 (or after his divorce action had been commenced and before the master had been appointed), libellant gave his residence as Neptune, New Jersey.

This evidence tends to establish lack of the jurisdictional requirement as to the residence of libellant in Pennsylvania. However, extrinsic fraud involving the jurisdiction of the court below is not so clearly established as is such fraud with regard to libellant's concealment of the whereabouts of the respondent and his failure to give her notice. Libellant's imposition upon the respondent, the court, and the Commonwealth was such as to require the setting aside and vacation of the fraudulent decree.

The order of the court below is reversed, and the decree of divorce is set aside and vacated. Costs to be paid by appellee.