Mulvihill, Appellant, *v.* Philadelphia Saving Fund Society et al.

Argued November 20, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

456

*Frank S. Dreeben,* for appellant, filed no brief.

*Charles J. Biddle,* and with him *Albert M. Hoyt, Jr.,* of *Drinker, Biddle & Reath,* for appellee.

OPINION BY CUNNINGHAM, J., March 13, 1935:

The action below was assumpsit to recover from Philadelphia Saving Fund Society (hereinafter referred to as the society) the sum of $710.26, with interest from July 26, 1932. The substance of plaintiff's statement of claim was that she had a savings account with the defendant society, the amount of which in March, 1933, exceeded, as she averred, the sum of $800; and that when she demanded payment of her balance on or about March 17th, the society offered to pay her only the amount by which her then balance exceeded $710.26.

The defense interposed was that a judgment creditor of the plaintiff, Industrial Finance Service, to use of Commonwealth Loans, Inc., had attached plaintiff's deposit and $710.26 thereof had been paid over to it pursuant to a judgment entered in Common Pleas Court No. 2 of Philadelphia County against the society as garnishee. Plaintiff's reply was that the society had not properly performed its legal duty to protect her rights as one of its depositors.

The society brought upon the record, by scire facias, as an additional defendant, Commonwealth Loans, Inc., upon the theory that it was liable over to the society for the cause of action declared upon by plain-

tiff. The result of the trial, before KNOWLES, J., and a jury, was a directed verdict in favor of each defendant; plaintiff now appeals from the judgment entered upon the verdict against her and in favor of the society. The assignments of error relate to the refusal of plaintiff's points and the affirmance of defendants' point for binding instructions.

In view of the directed verdict, we shall, in making a chronological summary of the facts, give the plaintiff the benefit of every material conflict in the testimony. Industrial Finance Service, being the owner of a judgment note dated January 31, 1927, payable to it one day after date in the amount of $200, with interest not exceeding 3½ per cent per month on unpaid balances (drawn under the provisions of the Act of June 17, 1915, P. L. 1012, as amended by the Act of June 4, 1919, P. L. 375) and signed "William F. McDevitt" and "B. Jennie Mulivihill," confessed judgment thereon at No. 2583 March Term, 1927, of the Court of Common Pleas No. 2 of Philadelphia County, pursuant to a warrant of attorney contained therein. The address of both makers was stated on the note as 6624 Lansdowne Avenue.

On June 27, 1932, this judgment was marked to the use of Commonwealth Loans, Inc., successor to Industrial Finance Service, damages were assessed in the aggregate amount of $671.40, and an attachment execution was issued in which the society was named as garnishee. The sheriff served the attachment upon the society the same day.

When the present savings account of plaintiff in the society was opened on November 21, 1922, she gave as her residence No. 325 North Preston Street, Philadelphia, and subsequently, January 4, 1928, gave an additional address—109 Bank Avenue, Riverton, N. J., in care of Oliver G. Willets.

Immediately upon the service of the attachment

upon the society, it addressed a letter to plaintiff by registered mail, notifying her of the service of the writ and informing her that immediate action was necessary to protect her interests; plaintiff admits the receipt of this letter.

There is a conflict in the testimony with reference to the date upon which plaintiff first called at the bank after the receipt of notice of the attachment. The testimony on behalf of the society is that she did not come until December 17, 1932. Plaintiff, however, testified that upon receipt of the letter of June 27, 1932, she went down to the bank and pursuant to the directions in the letter called at desk No. 4, where she was informed by the employe of the society in charge that H. Leon Bennett, Esq., the attorney for the execution creditor, had attached her money and was advised to go to see him. She also stated she told "the gentleman at window No. 4 at the bank" that "it was a forgery committed" and that she "never secured anybody" and "never owed anybody a dollar." Further statements by plaintiff were that she went to see Mr. Bennett and three days later went back to No. 4 window of the society and talked to a Mr. Patton, a clerk for the society. For present purposes, we must adopt the statement of the plaintiff that she called at the bank shortly after the receipt of the notice of the attachment and was referred to the attorney for the attaching creditor.

On July 6, 1932, interrogatories to the society were filed, to which it answered that it had "a depositor named B. Jennie Mulvihill" but it had "no knowledge or means of knowledge as to whether or not the said B. Jennie Mulvihill is the same person as the defendant [B. Jennie *Mulivihill*] named in this case" and demanded proof thereof. It also answered that it had no account in the name of William F. McDevitt, but the balance in the account of B. Jennie Mulvihill on

June 27, 1932, was $814.21. The attaching creditor then took a rule for judgment against the society upon its answers.

The testimony of H. Leon Bennett, Esq., was to the effect that plaintiff had called to see him before the attachment was issued; and that after making investigations at the home of Oliver Willets, plaintiff's employer, at Riverton, N. J., and at 325 North Preston Street, and satisfying himself that the B. Jennie Mulivihill, against whom the judgment had been entered, and plaintiff were the same person, he issued the attachment. He further stated that after being advised by the sheriff of service upon the society he communicated with its officers and counsel who declined to give him any voluntary information about plaintiff or about her account; that when the rule for judgment against the society upon its answers came on for argument before Common Pleas No. 2, he advised the hearing judge, LEWIS, J., of the results of his investigations.

The rule was made absolute and judgment entered against the society on July 25, 1932. A few days later, no appeal having been taken, the society paid the execution creditor $710.26 out of plaintiff's funds in satisfaction of the judgment thus entered against it.

The next proceeding in the matter was the filing by plaintiff in Common Pleas No. 2, on April 25, 1933, of a petition to open the original judgment and strike off the judgment against the society as garnishee. Answers were filed to the rule granted upon that petition, and, after argument, the rule was discharged by the court on May 15, 1933.

In her petition to open, plaintiff set forth, inter alia, that immediately upon the receipt of notice from the society of the attachment she called at its office and notified its employes "that there could have been no occasion for attachment of her account; that she

owed no one any money at all;'' that she called upon Mr. Bennett at the suggestion of the society and told him she had never signed any note and that ''in reliance on her belief that the whole matter was a fraud, ...... and that her rights were being protected ...... petitioner did nothing further.''

Plaintiff testified she never borrowed any money from Industrial Finance Service, did not know William F. McDevitt and did not sign the note upon which judgment was confessed. Assuming for the purposes of this case that these statements by plaintiff were true, although there is no corroboration of them in the evidence, it by no means follows that they furnish any ground for a recovery in this action. If she did not sign the note, her plain remedy was to petition for the opening as to her of the judgment confessed thereon. She had ample time to attack that judgment during the month which intervened between the admitted receipt of notice of the attachment from the society on June 28, 1932, and the entering of judgment against the garnishee on July 25th.

Counsel for plaintiff contends that the society was bound, as garnishee, to make every just and legal defense which plaintiff might have made, including an investigation of the origin of the judgment, the validity of the signature claimed to be that of plaintiff and the difference between the spelling of that signature and the spelling of plaintiff's name as one of its depositors. His theory is that a failure in any of these particulars subjected it to liability and entitled plaintiff to go to the jury.

We cannot agree with a number of these propositions. Assuming that plaintiff's testimony, to the effect that she informed the society that she was not indebted to anyone and had not become surety for any person and that there must have been a forgery, is true, the garnishee could not attack the judgment:

Black v. Nease, 37 Pa. 433, and O'Connor v. O'Connor, 2 Grant's Cases, 245. A judgment cannot be attacked collaterally. Plaintiff's redress, if her statements are true, was by a direct attack on the judgment. The society could not make that attack for her; it could not defend against the attachment upon the ground that its depositor's signature had been forged to the note. Cf. Bank of Northern Liberties v. Munford, 3 Grant's Cases, 232.

On the other hand, the rule is well established that a garnishee is a party to the litigation and as such is required to exercise a high degree of care in protecting the rights of the other parties until a legal result has been regularly reached. It follows that both a commercial and a savings bank are under a duty to protect the interests of depositors. Cf. Shipman v. Seiwell et al. 101 Pa. Superior Ct. 95, and May v. Newingham, 17 Pa. Superior Ct. 469.

The facts and the questions of law involved in the cases cited in behalf of plaintiff, including Schempp, to use, v. Fry, 165 Pa. 510, 30 A. 941, differed materially from those here present.

It is rather difficult to see what more the society could have done than it did do in protection of plaintiff's rights as one of its depositors. When required to answer the interrogatories, it stated that it did not know whether the "B. Jennie Mulvihill," who had an account with it, was the same person as the "B. Jennie Mulivihill" named as the defendant in the judgment and attachment, and demanded proof upon this question of identity. When served with the attachment it demanded from the attorney for the judgment creditor information with respect to the address of the defendant in the attachment. One of the addresses furnished by him corresponded with the address of its depositor as furnished by her for its records. It, however, made no admissions against

the interests of its depositor but demanded proof of identity.

When the society gave prompt notice to plaintiff of the attachment, advised her that prompt action upon her part was necessary, and answered the interrogatories in the manner stated, we think it performed its full duty under the circumstances of this case: Swanger v. Snyder, 50 Pa. 218.

Moreover, the entering of judgment against the society on its answers by Common Pleas No. 2 was an adjudication of the identity of plaintiff, as one of the makers of the note, with its depositor. The society paid over the money which plaintiff now seeks to recover upon an adverse judgment regularly entered against it by a court of competent jurisdiction.

After resolving every conflict in the testimony in favor of the appellant and giving her the benefit of every inference fairly arising therefrom, we agree with the court below that she was not entitled to go to the jury.

Judgment affirmed.